IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| BRADLEY CASTO, | |
| Plaintiff, | Case No: |
| v. | Judge: |
| KEN BAILEY, SHERIFF OF CLAIBORNE PARISH; JOHNNY SUMLIN; and LASALLE MANAGEMENT COMPANY, LLC, | Magistrate Judge: |
| Defendants. | **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff BRADLEY CASTO ("Mr. Casto"), by and through his undersigned counsel, sues Defendants KEN BAILEY, SHERIFF OF CLAIBORNE PARISH in his official capacity, JOHNNY SUMLIN, in his official capacity as Warden of Claiborne Parish Detention Center, and LASALLE MANAGEMENT COMPANY, LLC (collectively, "Defendants"), and states:

### PRELIMINARY STATEMENT

1.  Plaintiff Bradley Casto, an individual who is deaf, brings this action against Defendants for intentionally discriminating against Mr. Casto on the basis of disability during his nearly twelve-week stay at the Claiborne Parish Detention Center. Defendants' discriminatory acts deprived Mr. Casto of meaningful access to the courts, to counsel, to the telephone, to recreation and rehabilitation services, to communications with guards, and to disciplinary proceedings, and

1

resulted in unwarranted disciplinary actions and injury to Mr. Casto's health. Defendants Bailey and Sumlin violated Title II of the Americans with Disabilities Act ("the ADA"), 42 U.S.C. §§ 12131, *et seq.*; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504") and the Louisiana Commission on Human Rights Act, La.R.S. 51:2231 *et seq.*. Defendant Lasalle Management Company, LLC violated Section 504; and the Louisiana Commission on Human Rights Act, La.R.S. 51:2231 *et seq*. Mr. Casto seeks declaratory relief, compensatory damages, and attorneys' fees and costs.

## JURISDICTION

2. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343. This Court also has supplemental jurisdiction under 28 U.S.C. §1367(a) to consider Plaintiff's state law claims.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because (i) Defendants have sufficient contacts with this District to subject it to personal jurisdiction at the time this action is commenced; and (ii) the acts and omissions giving rise to this Complaint occurred within this District.

## PARTIES

4. Mr. Casto resides in West Monroe, Louisiana. Mr. Casto is substantially limited in the major life activity of hearing. He is a qualified person with a disability entitled to the protections of the ADA, Section 504, and the Louisiana Commission on Human Rights Act.

5. Defendant Ken Bailey is the Sheriff of Claiborne Parish, and is responsible by law for keeping the public jail of Claiborne Parish, La. R.S. 15:704 and 33:1435. His office has custody and control of the Claiborne Parish Detention Center and bears ultimate responsibility for its operation. He is sued in his official capacity.

6.      On information and belief, the office of the Claiborne Parish Sheriff receives federal financial assistance, and is therefore subject to the requirements of Section 504. It is supported directly by government funds, and is thus subject to the Louisiana Commission on Human Rights Act.

7.      Defendant Johnny Sumlin ("Sumlin") is the Warden of the Claiborne Parish Detention Center. As Warden, Sumlin oversees the operation of the Detention Center. Upon information and belief, Detention Center guards report directly to Sumlin.

*8.*     Defendant LaSalle Management Company, LLC, d/b/a LaSalle Corrections ("LaSalle"), is a Louisiana corporation with its primary place of business in Louisiana. Upon information and belief, LaSalle is a recipient of federal financial assistance and its operations are supported directly or indirectly by government funds. Upon information and belief, LaSalle operates programs and services within the Claiborne Parish Detention Center together with the Sheriff's Office, Bailey, and Sumlin.

## FACTUAL ALLEGATIONS

9.      Plaintiff Bradley Casto is deaf. He is substantially limited in the major life activity of hearing. He can speak, but is unable to hear and understand normal speech. He communicates best with sign language. His understanding of written English is limited.

10.     The limitations on Mr. Casto's ability to hear, speak, read, and write are obvious to anyone who attempts to communicate with him.

11.     Mr. Casto dropped out of the Louisiana School for the Deaf in the 7th grade. Mr. Casto has attempted to obtain his GED, but failed the test three times.

*Arrest and Detention*

12.     On March 13, 2014, Mr. Casto was arrested in anticipation of being charged with Louisiana Criminal Code Revised Statute (RS) 14:81, indecent behavior with a juvenile, and RS 14:81.3, computer aided solicitation. These charges were later dismissed.

13.     Upon arrest, Mr. Casto was brought to the Claiborne Parish Detention Center ("Detention Center"), where he remained in Defendants' custody until June 2, 2014.  He was in custody in the Detention Center for a total of nearly twelve weeks.

14.     Mr. Casto told guards and other employees and agents of Defendants at the Detention Center that he was deaf and could not understand orders, instructions, alerts, and other such notifications.

15.     During Mr. Casto's stay at the Detention Center, Defendants systematically failed to provide him with auxiliary aids and services that would make aurally delivered information available to him and thus enable him to access these orders, instructions, alerts, or other notifications. As a result, Mr. Casto did not have meaningful access to and was excluded from the services, programs, and activities of the Detention Center.

*Lack of Access to Policies and Procedures*

16.     Defendants failed to ensure that communications with Mr. Casto were as effective as communication with inmates who are not deaf, including communications concerning Detention Center rules, procedures, and activities, and including rules and procedures for using the telephone, requesting auxiliary aids and services, and filing grievances.

17.     During Mr. Casto's detention, Defendants never effectively communicated with him concerning his right to a qualified sign language interpreter, or his other rights as a person with a disability; or concerning the identity of the Sheriff's Section 504/ADA Coordinator(s).

Additionally, Defendants' personnel never effectively communicated to Mr. Casto that the Sheriff maintained Section 504/ADA Grievance Procedures as required by law, or told him how to file a grievance for disability discrimination.

18. As a result of the failure on the part of the Defendants to provide appropriate notices, auxiliary aids and services, and reasonable modifications, Plaintiff was not afforded the same protections, benefits and services afforded to non-disabled detainees.

*Lack of Telephone Access*

19. Upon arriving at the Detention Center, Mr. Casto requested permission to contact his wife. Detainees who did not have hearing impairments were given access to telephones upon which to communicate with others outside the jail. Defendants told Mr. Casto that he could use a standard telephone.

20. Mr. Casto told Defendants that he cannot use a standard telephone because he cannot hear well enough to understand the person speaking to him. Defendants did not offer Mr. Casto access to any other alternative means for communication with people outside the Detention Center, including his family and his attorney, such as a videophone.

21. A videophone is a device by which two individuals can connect to each other through a video link. Videophones cannot connect to programs such as Skype or Facetime, although videophones operate similarly. Through a videophone, both parties can communicate in sign language. The videophone is the most commonly used telecommunications device for deaf individuals, like Mr. Casto, who communicate best in sign language.

22. A person using a videophone can contact a person using a standard telephone via a federally-funded Telecommunications Relay Service. As part of this service, a Communication Assistant, who is a qualified sign language interpreter and has both a videophone and a standard

telephone, simultaneously interprets the conversation between the deaf and hearing callers, using a videophone to communicate with the deaf caller and a standard telephone to communicate with the hearing caller. Telecommunications Relay Services have strict rules regarding accuracy, impartiality, and confidentiality. There is no charge for using a Telecommunications Relay Service.

23. Because Defendants did not provide a videophone, Mr. Casto was unable to independently use the telephone.

24. If Defendants had provided a videophone, Mr. Casto would have been able to place and receive calls directly to another videophone or via the Telecommunications Relay Service, at no additional charge to Defendants.

*Lack of Access to the Court*

25. Court records reflect that Mr. Casto appeared before the Second Judicial District Court via telephone at 10:30 a.m. on March 17, 2014, at which time his bond was set at $100,000. Records also reflect that an attorney employed by the public defender's office represented Mr. Casto at this hearing. Upon information and belief, Mr. Casto was at the Detention Center during the March 17, 2014 hearing.

26. Upon information and belief, during these telephonic hearings, individuals have their charges explained to them and have the opportunity to request a lower bond, or to be released on their own recognizance, or, if they plead guilty, to be sentenced to time served and be released from the Sheriff's custody. Individuals also have a chance to communicate with defense counsel prior to these hearings, to discuss any information that may persuade the judge to lower the bond.

27. Despite the fact that Defendants knew that Mr. Casto is deaf and cannot understand information via telephone, Defendants' employees and agents did not provide Mr. Casto with

any auxiliary aids or services, or other effective means of communication, for the March 17, 2014 hearing.

28.  Because Defendants did not provide auxiliary aids and services, Mr. Casto was excluded from the hearing. He was unable to consult with counsel or to participate in the hearing. He had no opportunity to request a lower bond. Instead, he was handed a piece of paper after the fact saying that his bail was set at $100,000.

29.  Mr. Casto did not have a bail reduction hearing until May 26, after he had spent more than ten weeks in jail. At this hearing, the judge reduced Mr. Casto's bail to $5,000.

*Lack of Contact with Family*

30.  For several weeks, Mr. Casto was unable to place any phone calls independently. Upon information and belief, the telephone system at the Detention Center requires the caller to respond to a series of spoken prompts by entering numbers. Because Mr. Casto cannot understand what is spoken through a telephone, he could not understand the prompts and did not know which numbers to enter or when. Instead, he relied on other inmates to dial into the system and tell him which numbers to enter and when. This process repeated daily for two to three weeks until he mastered the ability to enter the correct numbers at the correct times.

31.  Even after Mr. Casto learned how to place an outgoing call, he still did not have meaningful access to the telephone system because he could not hear anything that was said to him over the phone.

32.  While detained, Mr. Casto attempted to call his wife daily. Although he could speak words to his wife, he could almost never understand the response she spoke to him.

33.  On some occasions, Mr. Casto and his wife needed to discuss legal matters, such as his upcoming court appearances. For these conversations, Mr. Casto had to rely on another inmate

who knew basic sign language to "interpret" his conversations with his wife. This inmate was not a qualified sign language interpreter. Further, the involvement of the inmate constituted an unnecessary invasion of Mr. Casto's privacy and potentially deprived him of the protection of marital privilege for their communications.

34.     On another occasion, Mr. Casto's wife needed to call him urgently because she fell, injured herself, and was hospitalized. Mrs. Casto could not reach her husband directly. Rather, she had to call the Detention Center and ask to speak to the Chaplain. The Chaplain then located her husband and attempted to facilitate communication between them. The Chaplain also is not a qualified interpreter.

*Lack of Access to Counsel*

35.     Because of the lack of telephone access, Mr. Casto could not communicate with his attorneys while at the Detention Center. This lack of direct communication limited his access to counsel and his ability to participate in his own defense.

36.     Mr. Casto called his attorney while at the Detention Center to ask the attorney questions. However, because Mr. Casto cannot hear what is said on the telephone, he could not understand anything that the attorney said in response. Instead of answering Mr. Casto's questions directly, the attorney had to call Mr. Casto's wife and give her the answers. Mrs. Casto then relayed the answers to Mr. Casto over the telephone, via the inmate who knew basic sign language.

37.     This process deprived Mr. Casto of access to counsel and it jeopardized attorney-client privilege by requiring Mr. Casto and his attorney to disclose the entire content of their communications to two non-parties: Mrs. Casto and an inmate.

38.     Had Defendants provided a videophone, Mr. Casto could have placed and received calls with his attorney via a Telecommunications Relay Service at no additional charge to the

Defendants. This service uses qualified interpreters who are required to maintain confidentiality, to convey messages simultaneously and accurately, and whose involvement does not implicate attorney-client privilege.

*Denial of Opportunities for Recreation and Rehabilitation*

39. Mr. Casto was also denied meaningful access to the recreation and rehabilitation services provided by Defendants.

40. The televisions at the Detention Center did not display closed captions. As such, Mr. Casto was unable to understand what was going on during television programs. Upon information and belief, other inmates could watch and enjoy television.

41. Upon information and belief, Defendants provide "opportunities to pursue continuing education, participate in rehabilitative programs, develop vocational skills, and even earn additional income." LaSalle Corrections, "Inmate Programs," *available at* http://www.lasallecorrections.com/inmate-programs/ (last visited March 9, 2015). These offerings are extensive. *See id.*

42. Because of the lack of effective communication, Mr. Casto did not know that the Detention Center offered this programming.

43. Even if Mr. Casto had known of this programming, he would not have been able to access it without a qualified sign language interpreter.

44. With the necessary auxiliary aids and services in place, Mr. Casto would have been able to take advantage of Defendants' rehabilitative programming.

*Inaccessible Communication and Alert Systems*

45. The Detention Center provided inmates with access to an intercom to communicate with the guards for assistance. However, Mr. Casto was unable to use the intercom because he could

not hear if it was answered. Because Mr. Casto could not use the intercom system, he could only get the attention of the guards when they happened to walk by his cell.

46. Mr. Casto also could not access the auditory alert system at the Detention Center. Defendants used the auditory alert system for many purposes, including waking up inmates in the morning. Mr. Casto could not hear the auditory alert.

47. Mr. Casto was forced to rely on another inmate to wake him in the morning.

48. On one occasion, the inmate failed to wake Mr. Casto. A guard woke Mr. Casto by kicking his bed and yelling at him. Mr. Casto informed the guard that he was deaf. The guard threatened to punish Mr. Casto if he ever failed to wake up on time again.

*Lack of Meaningful Access to Grievance Procedures*

49. Because of his disability and Defendants' failure to ensure that he could effectively communicate with Detention Center personnel, Mr. Casto was unable to communicate legitimate complaints and grievances about his treatment, including an assault by another inmate, inmates stealing his possessions and food, and inaction by Detention Center staff when he attempted to bring these matters to their attention.

50. Defendants failed to effectively communicate with Mr. Casto regarding the rules and procedures for filing grievances. As a result, he was unable to use the Detention Center grievance procedure.

*Discriminatory Discipline*

51. The Detention Center's guards subjected Mr. Casto to disciplinary action while he was incarcerated in the Detention Center. On information and belief, these actions were taken because he was deaf and/or because of Defendants' failures to ensure that communications with Mr. Casto were as effective as communications with hearing detainees.

52.     This disciplinary action included forcing Mr. Casto to sign a confession to allegations of misconduct that another inmate had lodged against him. Not only was Mr. Casto innocent of the misconduct, he could not read the paper that had him sign and was not aware that it was a confession until his wife read it to him after his release.

*Release and Dismissal of Charges*

53.     On June 2, 2014, Mr. Casto was released on bail.

54.     The charges against Mr. Casto were dismissed on January 16, 2015.

**COUNT I:**
**Title II of the Americans with Disabilities Act (42 U.S.C. § 12131 *et seq.*)**

55.     Plaintiff realleges and incorporates by reference each and every allegation above as if fully set forth herein.

56.     Title II of the Americans with Disabilities Act ("ADA") states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

57.     Mr. Casto is substantially limited in the major life activity of hearing and is therefore a individual with a disability within the meaning of the ADA, 42 U.S.C. § 12102(2).

58.     Mr. Casto is a qualified individual with a disability within the meaning of Title II of the ADA. 42 U.S.C. § 12131.

59.     Defendant Bailey, in his official capacity as Sheriff of Claiborne Parish, is a "public entity" pursuant to 42 U.S.C. § 12131.

60.     Defendant Sumlin, in his official capacity as Warden of Claiborne Parish Detention Center, is a "public entity" pursuant to 42 U.S.C. § 12131.

61.     Defendants Bailey, and Sumlin (collectively "Claiborne Defendants") operate and/or oversee the Detention Center.

62.     At all times relevant to this action, Title II of the ADA was in full force and effect in the United States, and Mr. Casto had a right not to be subjected to discrimination on the basis of his disability by the Claiborne Defendants. 42. U.S.C. § 12132.

63.     At all times relevant to this action, the U.S. Department of Justice ("DOJ") was empowered to implement regulations enforcing Title II of the ADA.

64.     Pursuant to these regulations, "[a] public entity shall take appropriate steps to ensure that communications with applicants, participants, and members of the public . . . with disabilities are as effective as communications with others." 28 C.F.R. 35.160(a). Specifically, "a public entity shall furnish appropriate auxiliary aids and services where necessary to afford qualified individuals with disabilities . . . an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity conducted by a public entity." 28 C.F.R. § 35.160(b)(1).

65.     Claiborne Defendants discriminated against Mr. Casto on the basis of his disability by failing to ensure effective communication and by otherwise discriminating against him on the basis of disability, in violation of 42 U.S.C. § 12132.

66.     As a result of Claiborne Defendants' discriminatory acts, Mr. Casto was denied meaningful access to Claiborne Defendants' services, programs, and activities, including but not limited to:

    a.   the rules and procedures of the Detention Center;

    b.   telephone communication with those outside the jail, including family;

    c.   communication and alert systems;

    d.   opportunity to consult in privacy with counsel;

  e. recreation and rehabilitative programming; and

  f. grievance procedures.

67. Defendants' failure to provide accessible telephone services deprived Mr. Casto of access to the courts and access to counsel, and caused Mr. Casto to spend an additional ten weeks in the Detention Center.

68. Claiborne Defendants further intentionally discriminated against Mr. Casto by treating him in a manner that was not equal to the manner in which they treated other inmates.

69. As a result of Claiborne Defendants' violations of Plaintiff's rights under the ADA, Mr. Casto has suffered from discrimination, unequal treatment, exclusion (including exclusion from Defendants' services, benefits, activities, programs, and privileges), violations of his rights under the laws of the United States, financial loss, loss of dignity, frustration, humiliation, emotional pain and suffering, anxiety, trauma, embarrassment, and unnecessary loss of rights and privileges, including unnecessary disciplinary measures, and injury to his health.

70. Claiborne Defendants' failure to comply with Title II of the ADA has resulted in harm to Mr. Casto, and Claiborne Defendants are liable to Mr. Casto for the harms he suffered.

**COUNT II:**
**Discrimination on the Basis of a Disability in Violation of Section 504 of the Rehabilitation Act (29 U.S.C. § 794)**

71. Plaintiff realleges and incorporates by reference each and every allegation above as if fully set forth herein.

72. Section 504 of the Rehabilitation Act states that no "qualified individual with a disability in the United States . . . shall, solely by reason of [] disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance . . . ." 29 U.S.C. § 794(a).

73. Mr. Casto is substantially limited in the major life activity of hearing and is an individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(20).

74. Mr. Casto is a qualified individual with a disability within the meaning of 29 U.S.C. § 794(a).

75. All Defendants receive federal financial assistance including but not limited to federal prisoner reimbursements and funds pursuant to the Victims of Crime Act of 1984.

76. At all times relevant to this action, the Rehabilitation Act was in full force and effect in the United States, and Mr. Casto had a right not to be subjected to discrimination on the basis of his disability by Defendants. 29 U.S.C. § 794(a).

77. The DOJ regulation implementing Section 504 of the Rehabilitation Act clarifies the requirements for federal financial recipients, including correctional facilities, stating that "[a] recipient that employs fifteen or more persons shall provide appropriate auxiliary aids to qualified handicapped persons with impaired sensory, manual, or speaking skills where a refusal to make such provision would discriminatorily impair or exclude the persons in the program receiving Federal financial assistance." 28 C.F.R. § 42.504(f).

78. Auxiliary aids include, but are not limited to, "qualified interpreters . . . and telephonic devices." 28 C.F.R. § 42.503(f).

79. The analysis of the regulations states that "correctional agencies should provide for the availability of qualified interpreters (certified, where possible, by a recognized certification agency) to enable hearing impaired inmates to participate on an equal basis with nonhandicapped inmates in the rehabilitation programs offered by the correctional agencies (e.g.. educational programs)." 45 Fed. Reg. 37630.

80. Defendants intentionally discriminated against Mr. Casto by, solely on the basis of disability by denying him meaningful access to Defendant's programs and activities, in violation of 29 U.S.C. § 794.

81. As a result of Defendants' discriminatory acts, Mr. Casto was denied meaningful access to Defendants' services, programs, and activities, including but not limited to:

    a. the rules and procedures of the Detention Center;

    b. telephone communication with those outside the jail, including family;

    c. communication and alert systems;

    d. opportunity to consult in privacy with counsel;

    e. recreation and rehabilitative programming; and

    f. grievance procedures.

82. Defendants' failure to provide accessible telephone services deprived Mr. Casto of access to the courts and access to counsel, and caused Mr. Casto to spend an additional ten weeks in the Detention Center.

83. Defendants further intentionally discriminated against Mr. Casto by treating him in a manner that was not equal to the manner in which they treated other inmates.

84. As a result of Defendants' violations of Plaintiff's rights under Section 504 of the Rehabilitation Act, Mr. Casto has suffered from discrimination, unequal treatment, exclusion (including exclusion from Defendants' services, benefits, activities, programs, and requirements), financial loss, loss of dignity, frustration, humiliation, emotional pain and suffering, anxiety, trauma, embarrassment, unnecessary loss of rights and privileges, including unnecessary disciplinary measures, and injury to his health.

85. Defendants' failure to comply with the Section 504 of the Rehabilitation Act has resulted in harm to Mr. Casto, and Defendants are liable to Mr. Casto for the harms he suffered.

## COUNT III:
### Discrimination on the Basis of a Disability in Violation of the Louisiana Commission on Human Rights Act (La. R.S. 51:2231).

86. Plaintiff realleges and incorporates by reference each and every allegation above as if fully set forth herein.

87. The purpose of the Louisiana Commission on Human Rights Act is to "prohibit[] discrimination in public accommodations . . . to safeguard all individuals within the state from discrimination because of race, creed, color, religion, sex, age, disability, or national origin in connection with employment and in connection with public accommodations." La. R.S. 51:2231.

88. The Louisiana Commission on Human Rights Act defines discrimination to mean "any direct or indirect act or practice of exclusion, distinction, restriction, segregation, limitation, refusal, denial, or any other act or practice of differentiation or preference in the treatment of a person or persons because of race, creed, color, religion, sex, age, disability, or national origin." La. R.S. 51:2232.

89. The Louisiana Commission on Human Rights Act further states that "it is a discriminatory practice for a person to deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation, resort, or amusement, as defined in this Chapter, on the grounds of race, creed, color, religion, sex, age, disability, as defined in R.S. 51:2232(11), or national origin." La. R.S. 51:2247.

90. At all times relevant to this action, the Louisiana Commission on Human Rights Act was in full force and effect in the Louisiana, and Mr. Casto had a right not to be subjected to discrimination on the basis of his disability by Defendants. La R.S. 51:2231 *et seq*.

91. Mr. Casto has a disability, within the meaning of La. R.S. 51:2232.

92. The Detention Center is a place of public accommodation within the meaning of La. R.S. 51:2232.

93. All four Defendants are "persons" within the meaning of La. R.S. 52:2232(8).

94. Defendants discriminated against Mr. Casto in violation of the Louisiana Commission on Human Rights Act.

95. As a result of Defendants' violations of the Louisiana Commission on Human Rights Act, Mr. Casto has suffered from discrimination, unequal treatment, exclusion (including exclusion from Defendants' services, benefits, activities, programs, and requirements), financial loss, loss of dignity, frustration, humiliation, emotional pain and suffering, anxiety, trauma, embarrassment, unnecessary loss of rights and privileges, including unnecessary disciplinary measures, and injury to his health.

96. Defendants' failure to comply with the Louisiana Commission on Human Rights Act has resulted in harm to Mr. Casto, and Defendants are liable to Mr. Casto for the harms he suffered.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Bradley Casto respectfully requests that this Court provide the following relief:

    (a) Issue a declaration that the Claiborne Defendants' policies, procedures, and practices have subjected Plaintiff to discrimination in violation of Title II of

the Americans with Disabilities Act, Section 504 of the Rehabilitation Act and the Louisiana Commission on Human Rights Act;

(b)  Issue a declaration that Defendant LaSalle's policies, procedures, and practices have subjected Plaintiff to discrimination in violation of Section 504 of the Rehabilitation Act and the Louisiana Commission on Human Rights Act;

(c) Award Mr. Casto actual damages;

(d) Award Mr. Casto compensatory damages;

(e) Award reasonable costs and attorneys' fees;

(f) Award any and all other legal and equitable relief that this Court finds necessary and appropriate.

Respectfully submitted,

/s/Nell Hahn

Nell Hahn, La. Bar No. 22406
ADVOCACY CENTER
600 Jefferson St., Suite 812
Lafayette, LA 70501
T: (504) 522-2337, ext. 311
F: (504) 522-5507
nhahn@advocacyla.org

Ronald K. Lospennato, La Bar No. 32191
(admission pending)
ADVOCACY CENTER
8325 Oak Street
New Orleans, LA 70118
T: (504) 522-2337, ext. 113
F: (504) 522-5507

        rlospennato@advocacyla.org

        Kathryn E. Fernandez, La. Bar No. 33829
        (admission pending)
        ADVOCACY CENTER
        8325 Oak Street
        New Orleans, LA 70118
        T: (504) 522-2337, ext. 147
        F: (504) 522-5507
        kfernandez@advocacyla.org

        Caroline E. Jackson, Esq.
        (admission *pro hac vice* pending)
        Debra J. Patkin, Esq.
        (admission *pro hac vice* pending)
        NATIONAL ASSOCIATION OF THE DEAF
        LAW AND ADVOCACY CENTER
        8630 Fenton Street, Suite 820
        Silver Spring, MD 20910
        T: (301) 587-7732
        F: (301) 587-1791
        caroline.jackson@nad.org
        *Attorneys for Plaintiff**

*Attorneys for Plaintiff gratefully acknowledge the contributions of the following students from the University of Maryland Francis King Carey School of Law: John Delaney and Hammad Rasul.

Date: <u>March 12, 2015</u>

## JURY DEMAND

Plaintiff Bradley Casto, through his undersigned attorneys, hereby demands a trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38.

        /s/Nell Hahn

        Nell Hahn

**Please Serve**

List the defendants here with their addresses for service


CLAIBORNE PARISH SHERIFF'S OFFICE
613 East Main Street
Homer, LA 71040,
SERVE ON:   KEN BAILEY,
            613 East Main Street
            Homer, LA 71040,

and

KEN BAILEY, Sheriff of Claiborne Parish
613 East Main Street
Homer, LA 71040

and

JOHNNY SUMLIN, Warden of the Claiborne Parish Detention Center,
1415 Highway 520
Homer, LA 71040,

and,

LASALLE MANAGEMENT COMPANY, LLC
192 Bastille Lane, Suite 200
Ruston, LA 71270
SERVE ON:   WILLIAM K. MCCONNELL
            192 Bastille Lane, Suite 200
            Ruston , LA 71270